NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KB RANCH, LLC, *Plaintiff/Appellant,*

*v.*

TROY ECKARD, et al., *Defendants/Appellees.*

No. 1 CA-CV 25-0825

FILED 07-27-2026

Appeal from the Superior Court in Yavapai County
No. S1300CV202500079
The Honorable Kristyne Marie Schaaf-Olson, Judge

**AFFIRMED**

COUNSEL

Rose Law Group PC, Scottsdale
By Shelton L. Freeman, Austin Moylan
*Counsel for Plaintiff/Appellant*

Gammage & Burnham PLC, Phoenix
By Christopher L. Hering, Daniella F. Lertzman
*Co-Counsel for Defendants/Appellees*

Law Office of Barry Olsen PLLC, Yuma
By Barry L. Olsen
*Co-Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge David B. Gass [1]and Judge D. Andrew Gaona joined.

---

**F O S T E R**, Judge:

¶1      Plaintiff KB Ranch, LLC ("KB Ranch") holds three easements across property owned by Defendants Troy and Claire Eckard, Trustees of the Troy and Claire Eckard Revocable Trust dated June 26, 2007. Jan Sterling owns KB Ranch, and through that entity sought a declaratory judgment enforcing its access to those easements. The superior court denied KB Ranch's request, finding that it did not prove that the Eckards unreasonably interfered with or obstructed access to the easements and KB Ranch's property. KB Ranch appeals that decision. This Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2      The parties own neighboring rural properties that were once a single parcel.

¶3      In 1998, A Bar V Cattle & Commerce Corporation ("A Bar V") owned the combined property and operated a cattle ranch on the land. A Bar V conveyed a portion of the cattle ranch to its owner's daughter, Laurie Boaz, and her husband to construct a home (the "Dominant Property"). Because the only access to the Dominant Property from public roadways was across the remaining cattle ranch (the "Servient Property"), A Bar V granted three easements to the Dominant Property to establish permanent legal access to it from public roadways.

---

[1] Judge David B. Gass was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2026. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

¶4            Easement 1 begins at the Dominant Property and runs west until it intersects with Peavine Road (formerly Old Road North) and then runs southwest until it exits at the Servient Property's southwest corner. The Deed states that Easement 1 "shall be fifty (50) feet in width along an irregular centerline to be designated by Grantees [the Boazes]." The Boazes designated the centerline of Easement 1 by constructing a roadway approximately 10 feet wide running from the Dominant Property to intersect Peavine Road as it ran southwesterly to the southern boundary of the Servient Property. That road was in place when the Deed was recorded.

¶5            Easement 2 begins where Easement 1 intersects Peavine Road and runs northeast before turning west and then north until it exits the Servient Property at either the western boundary "or at Grantor's option[,]" the northwest corner. The Deed states that Easement 2 "shall be fifty (50) feet in width," "along an irregular centerline to be designated by Grantor," and could be moved at grantor's election and expense. The grantor designated the centerline of Easement 2 by constructing a roadway approximately ten feet wide along the path described in the easement and exiting the Servient Property's western boundary.

¶6            Easement 3 begins where Easement 2 turns west and runs northeast across the Servient Property until it terminates at that property's northeastern corner. The Deed states that Easement 3 "shall be fifty (50) feet in width" "along an irregular centerline to be designated by Grantor" and gives the grantor the option to move the easement at its expense. There was testimony that Easement 3 follows an old railroad track.

¶7            The easements—shown on the map below—were not surveyed because the roadways were already in place, and the easements were to be 50 feet wide, centered on the existing roads, to account for the rural terrain. There is no evidence that the roadways have been moved since they were originally constructed.



¶8          In 2007, A Bar V sold the Servient Property to the Boazes, who continued cattle ranching operations.

¶9          In 2018, Jan Sterling, through her entity KB Ranch, purchased the Dominant Property, including the easements attached to the land. Sterling relies exclusively on the easements for access to the Dominant Property, and primarily uses Easement 1.

¶10          From 2018 to 2023, Sterling used the easements without interruption by the Servient Property's cattle ranch operations. Because the cattle roamed the ranch and got water from a trough at the ranch house, they did not congregate on the easements.

¶11          In 2023, the Eckards purchased the Servient Property and implemented different ranching practices, including fencing off areas of the Servient Property to control the movement of the cattle, so they could rotate them between pastures. As part of these changes, the Eckards installed fencing along the edge of the roadway in Easements 1 and 2. At places, the fencing is approximately 12 feet from the centerline of the roadway and therefore within the boundaries of the easements. In addition, the Eckards placed temporary watering troughs within the boundaries of the easements. This temporary placement of the water troughs lasted approximately three months while a generator for a ground water pump

was replaced. Eventually, the Eckards moved the water troughs adjacent to the roadway at the intersection of Easements 1 and 2.

¶12 KB Ranch filed this action alleging the Eckards interfered with its easement rights and asked the superior court to declare its rights under the Deed. Sterling testified that the Eckards' fencing and water trough placement caused cattle to congregate in the easements, frequently blocking them entirely and making Sterling's access to her property difficult or impossible. KB Ranch also asked the court to order the Eckards to show cause as to why they should not relocate all fence lines and the water trough outside the easements.

¶13 At an evidentiary hearing, the Eckards did not deny the location of a fence within Easements 1 and 2 but disputed that the water trough was within the easements. The Eckards maintained that KB Ranch did not need the full 50-foot easement width and their conduct did not unreasonably interfere with Sterling's use of the easements.

¶14 After considering the evidence, the superior court found that the Eckards' placement of a fence and water trough on Easement 1 did not interfere or impede Sterling's access. The court ruled that KB Ranch failed to establish that any of the Eckards' improvements unreasonably interfered with or obstructed access to the Dominant Property. The court therefore denied KB Ranch's request for an order requiring the Eckards to remove the improvements situated within the easements. The court found the Eckards prevailed and awarded them attorneys' fees and costs.

¶15 KB Ranch timely appealed. This Court has jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶16 KB Ranch argues the superior court erred by applying a reasonableness standard to allow obstructions within the easements, contrary to *Squaw Peak Cmty. Covenant Church of Phx. v. Anozira Dev., Inc.*, 149 Ariz. 409, 412 (App. 1986).[2] This Court reviews questions of law—

---

[2] KB Ranch also claimed the Eckards interfered with the easements by allowing their sprinklers to wet the roadway, failing to remove manure from the roadways, feeding cattle in the easements and encouraging cattle to congregate in the easements. On appeal, KB Ranch does not argue that the superior court erred by denying its request for relief with respect to

including the interpretation of an easement—*de novo*. *Id*. And it defers to the superior court's factual findings unless clearly erroneous. *Shooter v. Farmer*, 235 Ariz. 199, 200, ¶ 4 (2014).

### I.      The Eckards' Use of the Easements.

**¶17**          "Unless barred by the terms of the easement, the servient estate owner 'is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude.'" *Hunt v. Richardson*, 216 Ariz. 114, 121, ¶ 21 (App. 2007) (quoting Restatement (Third) of Property: Servitudes ("Restatement") § 4.9 cmt. c (2000)). Thus, the first inquiry is whether the terms of the Deed bar the improvement. *Id.* at 121, ¶ 22. As the superior court found, nothing in the Deed prohibits the Eckards from locating improvements within the easements. *Powell v. Washburn*, 211 Ariz. 553, 556–57, ¶¶ 13–14 (2006) (following Restatement § 4.1(1), cmt. a, which interprets servitudes according to the parties' intent as shown by the instrument's language and the circumstances of its creation).

**¶18**          KB Ranch argues that even though the Deed does not expressly prohibit improvements within the easements, *any* obstruction within the easements' bounds is unlawful because the Deed grants easements of a defined size (50-feet wide). It relies on *Squaw Peak*. That case, however, prohibits only permanent improvements that limit access to an express easement. *Squaw Peak*, 149 Ariz. at 414.[3]

**¶19**          In *Squaw Peak*, a church owned an easement "40 feet in width" over neighboring property. *Id*. at 411. It constructed a 28-foot-wide paved roadway in the middle of the easement, leaving 5-foot and 7-foot unpaved strips on either side of the roadway. *Id*. The neighboring property owner

these improvements or behaviors; therefore, this Court does not address those issues.

[3] This Court rejects the Eckards' suggestion that the Arizona Supreme Court overruled *Squaw Peak* in *Powell* and Arizona courts must now apply only Restatement § 4.9 to easement disputes. The court's ruling in *Powell* concerned interpretation of restrictive covenants (a form of servitude) and it adopted the approach in Restatement § 4.1 rather than a rule of strict construction. *Powell*, 211 Ariz. at 556–57, ¶¶ 12–14. It did not address *Squaw Peak* and nothing in its holding undermines *Squaw Peak's* continued validity. *See Hunt*, 216 Ariz. at 121, ¶ 22 (discussing *Squaw Peak* in its analysis of whether gate interfered with ingress/egress easement).

sought to install curbs perpendicular to the paved roadway on the 7-foot strip of easement. *Id*. The 6-inch tall curbs would prevent traffic from using 7 feet of the easement. *Id.* In denying the church's request to enjoin construction of the curbs, the superior court found that the curbs would not unreasonably interfere with the church's right of ingress and egress. *Id*. at 411–12.

**¶20**     On appeal, this Court held that because the easement was unambiguously 40-feet wide, the superior court had to determine whether the permanent curbs would obstruct access of any part of the easement, not just whether they impeded reasonable ingress and egress. *Id*. at 413–14. Noting multiple times that the proposed curbs were to be "permanently" located on the easement, this Court reversed the superior court's denial of the church's request for an injunction and ruled "as a matter of law that permanent curbing running perpendicular across an easement is an obstruction of that easement." *Id*. at 414.

**¶21**     KB Ranch insists that the holding of *Squaw Peak* is not limited to "permanent" improvements but prohibits the servient landowner's occupation of "any part of a defined easement." Careful reading of *Squaw Peak*, though, reveals the language KB Ranch cites: "permanent obstructions" in "any part" of the easement. *Id*. at 413 (quoting *Hoff v. Scott*, 453 So.2d 224, 225–26 (Fla. App. 1984)).

**¶22**     This Court in *Squaw Peak* prohibited only permanent—not temporary—improvements within an easement, and this Court declines to extend that rule to temporary items. *See also Metro. Water Dist. of Salt Lake & Sandy v. Sorf*, 542 P.3d 87, 95–96, ¶¶ 34–35 (Utah App. 2023) (discussing cases that have adopted the "bright-line" exception to the rule of mutual reasonableness by classifying as unreasonable any "permanent structure" within the boundaries of negotiated easements); *Johnson v. Highway 101 Invs., LLC*, 319 P.3d 485, 487 (Idaho 2014) (identifying cases that recognize an exception "to the general rule of reasonableness" as "a permanent structure is per se unreasonable if it diminishes an easement with definite location and dimensions"); *Aladdin Petroleum Corp. v. Gold Crown Props., Inc.*, 561 P.2d 818, 825 (Kan. 1977) ("Construction of carports or other permanent obstructions over a portion of an easement for passage of a definite width wrongfully impairs and interferes with the privilege of passage which the owner of the definite easement holds.").

**¶23**     KB Ranch points to a Wyoming Supreme Court decision, *Lamb v. Wyo. Game and Fish Comm'n*, 985 P.2d 433 (Wyo. 1999), which affirmed an order directing servient landowners to remove not only

permanent structures, but also "other objects" from within the bounds of defined easements granted to the public for fishing access. *Id.* at 436, 438. The Wyoming Supreme Court did not, however, adopt a rule barring placement of any object—no matter how temporary—within a defined easement. *See id.* And even if it had, this Court would decline to follow such an approach in light of *Squaw Peak's* permanency language.

**¶24** Accordingly, when an easement does not preclude a servient landowner from erecting improvements, temporary improvements are not automatically barred, even when the bounds of the easement are expressly defined. *See Hunt*, 216 Ariz. at 121, ¶ 23. Instead, the superior "court must consider and balance the parties' interests." *Id.* (citing Restatement § 4.9, Reporter's Note). This balancing is typically a question of fact dependent on the circumstances of the particular case. *Id.*

**¶25** Restatement § 4.9 cmt. c states:

> If an improvement is temporary and easily removed, it is generally not unreasonable. The more expensive the improvement or the more difficult its removal is likely to be, the more likely is the conclusion that the improvement is an unreasonable interference with the easement . . . .

Restatement § 4.9 cmt. c. Thus, a court may consider the nature of the improvement and whether it may hinder future development of the easement when deciding the reasonableness of an improvement. Indeed, the Restatement illustrates an example with similar facts to those in this case:

> O, the owner of Blackacre, conveyed to A, the owner of Whiteacre, a 60-foot-wide easement for a road to provide access to Whiteacre. There is currently a narrow dirt lane within the easement area. A has no current plans to improve the road, but plans to do so when Whiteacre is eventually subdivided. O is using the area up to the lane for pasture and has erected a temporary fence along the lane to keep the livestock from straying. In the absence of other facts or circumstances, O is entitled to maintain the fence within the easement area because the fence will be relatively easy to remove when A wants to widen the road.

Restatement § 4.9 cmt. c, illus. 5.

¶26        Here, the two contested improvements are the water trough and the fence. Both are removeable improvements. Because the Deed does not prohibit placement of improvements in the easements and the Eckards' improvements are removable, the superior court appropriately considered and balanced the parties' interests to determine whether the water trough and fence unreasonably interfered with KB Ranch's enjoyment of the easements. *Hunt,* 216 Ariz. at 121, ¶ 21; Restatement § 4.9, Reporter's Note ("When the parties have not spelled out the details of their arrangements, it is assumed that they intended a mutual accommodation of their interests. An interpretation that balances their interests is proper[.]").[4] Based on the evidence presented, the record supports the superior court's finding that the water trough and fence do not unreasonably interfere with or impede KB Ranch's use and enjoyment of the easements.

## II.    KB Ranch's Easements.

¶27        In affirming the superior court's ruling, this Court must address the Eckards' suggestion in their answering brief that the superior court limited the easements to 10-foot-wide roadways.

¶28        "An easement is a right to use the land of another for a specific purpose." *Scalia v. Green*, 229 Ariz. 100, 102, ¶ 7 (App. 2011); Restatement § 1.2 ("An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement."). All residual use rights remain in the servient landowner. Restatement § 4.9 cmt. c. An express grant of an easement defines the grantee's rights, and Arizona courts will interpret it to give effect to the parties' intention. *See Powell*, 211 Ariz. at 557, ¶ 14; Restatement § 4.1(1) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.").

¶29        The Eckards contend the Deed's failure to describe the location of the easements by reference to metes and bounds, angles,

---

[4] The superior court found that the water trough is adjacent to, not within, the easements, a finding supported by the evidence. Nevertheless, because actions that make it more difficult to use an easement may constitute an unreasonable interference with the easement, the parties' interests must be balanced to determine whether they interfered with access and use of the easements. Restatement § 4.9 cmt. c.

distances or fixed landmarks renders the Deed insufficiently specific and definite for a court to enforce according to its terms. Therefore, and even though there is no dispute that the Deed states the easements are 50-feet wide, the Eckards argue the superior court was allowed to apply a "necessary and reasonable under the circumstances" rule to determine the bounds of the easements. They claim the court did so and found that KB Ranch is entitled to only a 10-foot roadway to access the Dominant Property.

¶30 The superior court's ruling does not support the Eckards' position, nor does the law. *See Squaw Peak*, 149 Ariz. at 412 (court's will enforce an unambiguous easement according to its terms). The court's order did no more than determine that KB Ranch did not establish that the Eckards' improvements infringed on access to the easements or the Dominant Property. In denying KB Ranch's request for a declaratory judgment, the superior court did not limit the defined 50-foot easement to the 10-foot-wide roadway. *See id*. (stating that if the language creating an easement is ambiguous, a "reasonably convenient and suitable way across the servient land is presumed"). Although the court made factual findings that the 10-foot-wide roadways are sufficient for KB Ranch to access the Dominant Property, such findings were in support of the superior court's determination that KB Ranch did not meet its burden of proof.

### III. Attorneys' Fees and Costs.

¶31 Both parties request an award of attorneys' fees and costs on appeal, citing A.R.S. §§ 12-341 and -341.01. Because KB Ranch did not prevail on appeal, this Court denies its request.

¶32 Because the Eckards prevailed, this Court awards their reasonable attorneys' fees and costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. A.R.S. §§ 12-341.01, - 342.

### CONCLUSION

¶33 This Court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR